# DRAFT

**Date:** Draft

**Report by:** Scott L. Turner

**Prepared for:** Attorney Andrew D. Concannon
Smith Bovil, PC
200 St. Andrews Road
Saginaw, Michigan 48638

**Case Caption:** Paul Goodman, et al v. Dillon Transportation, LLC

**Jurisdiction:** United States District Court, Eastern District of Michigan,
Northern Division

**Cause/Case/Docket Number:** 2:14-cv-11473-AJT-RSW


**General Information:**

**Date & Time of Crash/Loss:** Thursday, April 26, 2012 / Approximately 10:30AM

**Location of Crash/Loss:** TRW – Saginaw Integrated Chassis Systems, Saginaw, MI

**Equipment Involved:** Defendant: 2006 Great Dane Lowboy type Semi-Trailer
VIN: 1GRAA06267B705402
GVWR: 55,000

**Motor Carrier USDOT Number(s):** 706271

**Motor Carrier Status:** Satisfactory (Rating Date: 3/3/10; Current as of: 4/27/15)

**Weather Conditions:** Intermittently Overcast

**Road Surface Conditions:** No Precipitation

**Natural Lighting Conditions:** Daylight

**Artificial Lighting Conditions:** N/A

**Date and Location of PCI:** April 14, 2015 / ESI, 1174 Oak Valley Drive, Ann Arbor,
Michigan, 48108
734-794-8100

1

## 1.0 Persons and Organizations:

➢ Paul Goodman (hereinafter "Goodman"): Goodman was the TRW employee that was operating the forklift at the time of the incident whereas the semi-trailer of Dillon Transportation, LLC collapsed causing injury to Goodman.
➢ Miguel Urjiles  (hereinafter "Urjiles"): Urjiles was the Commercial Motor Vehicle driver/operator that drove the CMV to TRW, then operated the semi-trailer Maxi-Lok trailer elevation system that ultimately collapsed.
➢ Dillon Transportation, LLC (hereinafter "Dillon"): Dillon is the owner and operator of the Great Dane lowboy type semi-trailer that is subject to the collapse that occurred at TRW.
➢ TRW – Integrated Chassis Systems (hereinafter "TRW"): TRW is the facility located in Saginaw, Michigan where Urjiles was dispatched to in order to deliver his lading of automobile brake calipers.

## 2.0 Abbreviations and Acronyms:

➢ USDOT – United States Department of Transportation
➢ 49 CFR – USDOT, Code of Federal Regulations
➢ FMCSA – Federal Motor Carrier Safety Administration
➢ FMCSR – Federal Motor Carrier Safety Regulations
➢ CMV – Commercial Motor Vehicle
➢ CDL – Commercial Driver's License
➢ PCI – Post Crash (Incident) Inspection
➢ WM – Weights and Measures

## 3.0 General Description:

The lowboy semi-trailer of Dillon was involved in a precipitous collapse while forklift operator Goodman was inside the semi-trailer off-loading pallets of brake calipers at the TRW facility. Goodman was operating the forklift in a seated position with his seat belt applied at the time of the collapse.

Said unexpected precipitous collapse caused injury to Goodman as the semi-trailer dropped from its fully elevated position to its bottomed out position of which is approximately 11 inches.

Cause of the collapse was determined by SLTC to be as a result of the improper seating of the kickstand legs' wear pad on top of the #2 semi-trailer axle.

2

**4.0 Assignment:**

The undersigned has been requested to examine all of the documents listed in the Document's Reviewed section of this report. Apply the knowledge, experience and education along with industry standards of care and the FMCSR to determine probable causation as to the semi-trailer collapse that caused injury to Plaintiff.

In addition, apply the learned issues of the PCI that took place by the undersigned on April 14th, 2015 at ESI.

**5.0 Introduction and History:**

Dillon is a Motor Carrier that is engaged and authorized in interstate commerce whereby the full weight of the FMCSR is applicable to both the Motor Carrier, as well as their drivers, in the subject case, Urjiles.

Near immediately prior to backing the Dillon semi-trailer fully to the TRW dock facility at Saginaw, Michigan, with a lading of automobile brake calipers, Urjiles was required to perform specific functions with his assigned semi-trailer.

The subject semi-trailer (Dillon #530619) is designed by what is referred to as a lowboy semi-trailer. When the semi-trailer is functioning properly, the driver/operator would be required to ultimately make an air application on a control panel to raise or lower the rear of the semi-trailer. This type system is referred to as a Hendrickson Maxi-Lok®, hereinafter referred to as a "Maxi-Lok".

The semi-trailer raising scenario occurs by the driver/operator in so that the back tailboard of the semi-trailer can safely reach the dock height where a dock plate (or alike) would span the gap between the elevated semi-trailer tailboard and the dock.

LEFT BLANK INTENTIONALLY



Photo #1                                                                  Source: SLTC-PCI

Once the raising is complete and the kickstand legs are inspected for proper positioning by the CMV driver, the driver/operator can then back to the loading dock to be loaded or offloaded with the assigned freight.

The raising aspect of the above process occurred, as did the backing to the loading dock process. Evidence indicates, as does the mere fact of the collapse itself, and no reported damage to the semi-trailer's Maxi-Lok system post incident, that driver failure was the main and most probable only contributing factor to the collapse.

While off loading a sixth pallet of brake calipers with a forklift, the semi-trailer precipitously collapsed approximately 11" from its elevated height to its bottomed out (airbag deflated) position. Said collapse caused injury to Goodman of whom had to be extricated by emergency personnel.

## 6.0 Document Examination:

There were various documents examined as listed below in "Documents Reviewed" section of this report. Throughout the review process the specific points, testimony and issues of examination are included in this section of the report while they are often applied to industry standards of care and the FMCSR, in combination with the

undersigned's years of experience, training and knowledge, and a thorough PCI conducted.

**Review:**

The purpose of the Hendrickson Lowboy design – of which is paramount to this case and the resultant injury – is to allow the Motor Carrier to be capable of achieving maximum cubic footage in the semi-trailer.

Unlike standard type semi-trailers that are 53' long and 102" wide, the same dimensions as the subject semi-trailer, the lowboy has an ability to more or less squat significantly lower than that of a standard semi-trailer, thereby creating more cubic footage in the cargo area.

The squatting affect causes for the trailer to be capable of dropping its elevation after the cargo has been loaded on-board, thereby making the CMV legal bridge height.

In order to be capable of making this type lowboy semi-trailer design the way it is designed, there is the requirement to have the driver/operator of such a semi-trailer safely elevate the semi-trailer to the typical dock height of 3'.6"– 4'2".

Once the operator has completed the elevation of the rear portion of the semi-trailer for loading at the dock purposes, then the lowering process once loaded or off-loaded to make the semi-trailer bridge height legal, the operator is safe to proceed on the roadways with said semi-trailer.

As such, it is imperative that the CMV driver must be adequately trained on the particular equipment he/she is using.

**6.1 Hendrickson Lowboy System Operation-**

The subject semi-trailer is a 2006 Great Dane lowboy design semi-trailer whereas the semi-trailer operates while in transit at a deflated position regarding the lowboy system. Once the semi-trailer is in transit the air-ride suspension system takes over and provides for an air-ride suspension ride.

5



Photo #2                                                    Source: SLTC-PCI

The above photo depicts in-part the air-ride suspension system that engages once the CMV is traveling on a roadway, or traveling in general.

This same air-ride system serves a dual purpose, it provides for the elevation required to engage the kickstand legs onto the axle to provide for rigid support allowing the trailer to be safely loaded/off-loaded at a loading dock.

The following photograph demonstrates the same airbag that is utilized, however, fully inflated to elevate the back-end of the semi-trailer to meet the required dock height of which is typical from 3'6" to 4'2".

LEFT BLANK INTENTIONALLY



Photo #3                                                          Source: SLTC-PCI

The way the system works is the airbags are inflated, once the CMV operator follows a specific protocol regarding the semi-trailer parking brake system. The system functions by applying the black air valve located on the side of the semi-trailer, driver-side.



Photo #4                                                          Source: SLTC-PCI

Once said valve is applied, after the trailer spring brakes are released the airbags inflate. Said inflation causes the semi-trailer to fully elevate. At the same time this elevation is occurring, there is an air chamber, similar to that of a foundation air brake chamber. The air chamber converts air pressure to mechanical energy.

Although there is no image that clearly depicts the action of the air chamber that is utilized in the lowboy elevation system, the best method of communicating the system's operation and function is by demonstrating how an air-brake chamber works. It is the same principal as to foundation air-brake pushrod application, again, air pressure being converted to mechanical energy.



The above image demonstrates an air chamber that has a pushrod originating from its center whereby it attaches to a slack adjuster rod by a clevis, this is the only difference.

Where the pushrod clevis attaches to the slack adjuster, in the air chamber application for the Hendrickson semi-trailer elevation system the pushrod actually attaches to a horizontal shaft that ultimately controls the kickstand legs by swinging the kickstand legs into position by achieving an approximate 90 degree swing.

Although it may be somewhat difficult for the layperson's eye to discern exactly what the following photograph demonstrates, it is merely the pushrod coming out of the air chamber that connects to the shaft that ultimately controls the up or down movement of the kickstand legs.

8



Photo #5                                                                                    Source: SLTC-PCI

When the CMV driver applies the black air-valve on the side of the semi-trailer, the pushrod is mechanically pushed out of the chamber where the air pressure has been converted to mechanical energy.

The pushrod is attached to the horizontal shaft forming somewhat of a "T". Once this mechanical energy occurs, the horizontal shaft that extends out to the left and right sides from the center of the semi-trailer, the horizontal rod rotates the kickstand legs (left and right) downward. The kickstand legs are attached to either side of the horizontal shaft and rotated onto the axle for support.

When the kickstand legs are to be retracted back to their stowed position for operation on public roads, the springs noted in photo #5 pull the kickstand legs back to their stowed position, parallel to the roadway. This is after the black air valve is depressed by the driver/operator, the air springs (air bags) re-inflate allowing the wear pads to clear the axle, the semi-trailer then resettles back to its road ready position.



Source: Hendrickson (Attached Exhibit: SLTC-A)

The kickstand legs begin in a parallel to the roadway position in their stowed position, once applied onto the axle they have partially circumferentially rotated approximately ninety degrees. In the kickstand's application position it is divergent to their stowed position whereas it is at a right-angle to the roadway surface while in its support mode sitting on the #2 axle of the semi-trailer.

## 6.2 Elevation of Hendrickson System-

The complete semi-trailer elevated height achieved according to the surveying rod established by ESI on the day of the PCI indicates to be an approximate elevation of 10". Although the difference is slight, SLTC had established a finished, loading ready elevation of 11" from the ride height, a difference of approximately 1". The disparity likely exists due to the fact that the surveying rod was placed approximately 2'5" from the most rear point of the semi-trailer. The measurements taken by the undersigned were taken at the most rear point of the semi-trailer by use of a plumb bob and a WM Certified steel tape measurer.

For purposes of this section of the report, the surveying rod measurements will be used to have comparative reference with ESI's findings.

 

Photo #6                                    Photo #7                      Source: SLTC-PCI

         Pre-Elevation                               Post-Elevation

It is clear to see that the trailer elevates at a minimum of approximately 10". Based on that fact, without the primary and only support mechanism properly applied, – the kickstand legs – the semi-trailer is prone to a rapid and precipitous collapse as the air deflates from the airbags once the kickstand legs are supporting the semi-trailer while resting on the semi-trailer's #2 axle.

The only two probable causes as to the precipitous collapse that occurred would be that the kick-stand legs were either damaged whereas they were incapable of supporting the semi-trailer; or, the kick stand legs were not properly seated on the wear pads.


**6.3 Inspections (Annual/Post Incident)-**

There are two notable inspections conducted that are relevant to this subject incident. First, the last Annual Vehicle Inspection Report. On March 28, 2012 two individuals performed said inspection. Although there is no direct consideration given to the inspection of the Maxi-Lok assembly, further, there is no consideration listed in Appendix G of the FMCSR as to the Maxi-Lok assembly or the alike, there was no notation mentioned as to the Maxi-Lok being damaged or otherwise.

Appendix G of the FMCSR is the Minimum Periodic Inspection Standards that a Motor Carrier must have inspected when performing an annual, systematic or periodic inspection.

As to the second relevant inspection regarding the subject incident, a post incident inspection was performed by PM Trailer Service. In an email from dillontr@host235.hostmonster.com to form.breakdown@dillontransportation.com on Thursday, April 26, 2012 at 3:58PM, it states: *"PM Trailer Service check out the trailer and found it to be in perfect shape, no defects at all."*

With the fact of there being no mention or notation to the semi-trailer's Maxi-Lok assembly prior to the incident – resulted from the Annual Inspection – although not required, it was not listed as a defect. Further, there was no defective findings from PM Trailer Service on a post incident inspection of which would have been targeted on the Maxi-Lok assembly.

### 6.4 Operator/Driver Duty to Inspect-

In the control box next to the black air-valve located on the driver's side of the semi-trailer, near the semi-trailer tires, once the Maxi-Lok control box is opened, to the left is a set of very explicit instructions on how to operate the Maxi-Lok system (see Photo #4).



Photo #8                                                                Source: SLTC-PCI

Note the two red arrows placed by SLTC for the purposes of highlighting the principal points. They state as follows:

> ➢ *"Verify that both support stands have swung into position over the axle and the air springs have exhausted."*
> ➢ *"**Caution** – Do not attempt to load or unload the trailer without having both support stands resting on the axle. Equipment damage and/or personal injury may occur."*

Clearly, if the only option for failure of the system is failure of the operator/driver to inspect prior to permitting activity in the back of his CMV, causation becomes a stand alone issue: the driver failed to inspect to insure the kickstand legs were fully applied whereas the wear pads were sitting firmly on the axle.

In a signed statement by the driver Urjiles on April 26, 2012, he states the following as to the protocol that he applied in the raising of his semi-trailer's Maxi-Lok system: *"I lifted trailer up, when it is completed up, then backed into the dock."*

One very important point of this process of which is a contributing factor is that Urjiles failed to inspect the Maxi-Lok for its proper positioning. There is no way that this inspection took place after raising the semi-trailer to its freight loading position.

### 6.5 Functionality Inspection of the Maxi-Lok® Assembly-

The Maxi-Lok is a very simplistic system that does not require a comprehensive course for its intended driver(s). In fact, the process could be taught within a matter of 15 – 30 minutes including a hands-on training application. Certification is not required, yet training is.

A properly trained driver/operator would be most importantly trained in the proper post-elevation inspection of the semi-trailer to insure the kickstand legs are properly applied and that the air bags have been deflated. Further, the driver/operator would be trained in the assurances of properly lowering the unit for proper ride height.

LEFT BLANK INTENTIONALLY



Photo #9                                                    Source: SLTC-PCI

After the driver/operator completes the activities of raising the semi-trailer to dock height, after he/she hears the air springs exhaust of air pressure, he/she is required to inspect that the angle iron wear pads are firmly resting on the axle. If this occurs there is no probability of having the kickstand legs kick out.

This inspection can be simplistically accomplished from several vantage points. First, by looking between the two axles or two sets of tires on the driver-side, then the same process on the curbside. The second vantage point is to look behind the rear most tire at the associated axle #2, as seen in the above photograph #9, then doing the same inspection on the curbside.

The combination of the examination would take no greater than 15 – 30 seconds, certainly less than one minute, all inclusive. The last and least likely inspection point would be to crawl underneath the semi-trailer, however, unnecessary in most cases.

Failure to perform this simplistic and quick inspection places unnecessary peril to those of who may be assigned to working in or around the semi-trailer when being loaded with freight. Further, by the CMV driver ultimately backing to the dock for loading gives a forklift operator and dockworkers a false sense of security.

Looking at the reverse angle of the wear pad resting on the axle, the following closer detail photograph is offered:



Photo #10                                                                        Source: SLTC-PCI

The following photograph points out a few key issues. First, if in fact the wear pads on the bottom of the kickstand legs were not properly seated, as they are in the above photo #9 and #10, there would be a likely collapse of the semi-trailer as the airbags are deflated as part of the Maxi-Lok function. Second, the following photograph #11 clearly demonstrates a kickstand that is not fully seated on the axle. This can be determined based on the position of the kickstand leg; the daylight observed between the wear pad and the axle; and, the difference in oxidation activity where the wear pad rests compared to the adjacent axle surfaces. It must be noted that this condition in photo #11 was intentionally created during the PCI and is not suggested to having been a photo of the actual condition at the time of the incident.

15



Photo #11                                                  Source: SLTC-PCI

Based on all of the facts of a proper inspection of the kickstand positioning most probably not being performed by Urjiles, and the process of elimination of other factors of causation, it is most probable that the kickstand legs got hung up in a relatively similar position as in photo #11, unbeknownst to Urjiles.

Although the following depiction is that of a SAF Holland Posi-Lok, it is similar in its functionality. The below is offered to give a better understanding to the reader as to how the Maxi-Lok system specifically operates:

16



Source: Holland – PosiLok Operation Information; XL-AR408, Rev G

The key difference in the Posi-Lok system to that of the Maxi-Lok is the Posi-Lok is designed for a complete automated process without driver intervention. The Maxi-Lok requires driver interaction by air valve operation, further, the control panel door specifically instructs the driver to inspect the kickstand legs. Further, the Posi-Lok is used on standard semi-trailers rather than lowboy trailers such as the Great Dane trailer of subject.

## 6.6 Lubrication-

The FMCSR states the following as to a regulatory enforcement issue concerning lubrication of CMVs:

> ➢ *§ 396.5: Lubrication. Every motor carrier shall ensure that each motor vehicle subject to its control is—(a) Properly lubricated;*

During the PCI it was noted that there was lubrication (grease) on the rod that carries the kickstand legs, however, there was no evidence of fresh grease that would squeeze out of the area intended to be greased, as observed in the following photograph:



Photo #12                                                          Source: SLTC-PCI

Improper grease application, or the failure to grease (lubricate) would result in the intended point of movement that needs lubrication to properly work, it would become hung-up, stiffened or incapable of its full action required. In the absence of lubrication, friction takes over causing restricted and/or resisted movement.

In this case, it most probably resulted in the kickstand legs from reaching their full required swing into the approximate ninety degree right angle position (referenced to the roadway surface), similar to that of photo #9.


**6.7 Training-**

The FMCSR states the following as to driver knowledge and the employer's obligation to insure this knowledge by instruction:

> ➢ *§ 390.3: General applicability. (e)* **Knowledge of and compliance with the regulations.** *(2) Every driver and employee shall be instructed regarding, and shall comply with, all applicable regulations contained in this subchapter.*

Accordingly, the FMCSR under § 391.31 requires that the assigned driver to specific types of CMV equipment and associated equipment must be capable of safely operating the same. The regulation states the following:

> *§ 391.31: Road test. (b) The road test shall be given by the motor carrier or a person designated by it. However, a driver who is a motor carrier must be given the test by a person other than himself/herself. The test shall be given by a person who is competent to evaluate and determine whether the person who takes the test has demonstrated that he/she is capable of operating the commercial motor vehicle, and associated equipment, that the motor carrier intends to assign him/her.*

It is important to note that the Motor Carrier can option to waive the road test, however, that does not relieve the Motor Carrier from being required to insure their driver's knowledge of the equipment assigned to the driver.

As specified under § 383.111, a CMV driver has specific requirements of both vehicle inspections for safe operations, and safe operations when a specific CMV is under his/her care and control. It further identifies 20-points of "required knowledge" that a CMV driver must possess and comply with:

> *§ 383.111 Required knowledge. (a) All CMV operators must have knowledge of the following 20 general areas: (1) Safe operations regulations. Driver-related elements of the regulations contained in parts 391, 392, 393, 395, 396, and 397 of this subchapter, such as: (i) Motor vehicle inspection, repair, and maintenance requirements; (ii) Procedures for safe vehicle operations;*

Urjiles clearly failed in these requirements. Had he complied, and had Dillon assured his knowledge by way of effectively training him on this type of equipment, most probably this incident would not have occurred.

By virtue of the semi-trailer collapse in and of itself, it is clear that Urjiles did not effectively inspect the kickstand leg application, in the unlikely event that he had inspected it at all.


## 6.8 Other FMCSR Violations-

> *§ 396.7: Unsafe operations forbidden. (a) General. A motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle.*

By the FMCSR, Dillion is prohibited from operating a CMV in a condition such that may cause an "accident". Although the term accident is not defined in specificity as to location, it is not limited to operation in roadway use.

19

The FMCSR pertains to CMVs in operation both on roadways as well as at loading docks. To support this statement there is the FMCSR-DOT interpretations for § 390.3 where it states: *Question 16: Are vehicles which, in the course of interstate transportation over the highway, are off the highway, loading, unloading or waiting, subject to the FMCSR during these times? Guidance: Yes.*

Therefore, there is no escaping the FMCSR and its regulations while the Dillon CMV was operating at the TRW facility in Saginaw, Michigan.

---

> § 390.3: *General applicability.* (e) ***Knowledge of and compliance with the regulations. (3) All motor vehicle equipment and accessories required by this subchapter shall be maintained in compliance with all applicable performance and design criteria set forth in this subchapter.***

The FMCSR requires that the subject CMV equipment be maintained to satisfy the applicable performance of such equipment, no exceptions. By evidence of the semi-trailer collapse, the CMV was not maintained to standard.

## 7.0 Opinions:

Based upon the foregoing analysis, as a Commercial Motor Vehicle expert possessing nearly 25 years experience in the Transportation Industry and based upon what is good and safe practices in the Transportation Industry, I have come to form the following opinions as to the semi-trailer collapse that caused injury to Plaintiff which occurred at TRW in Saginaw, Michigan.

I express these opinions with a reasonable degree of certainty and probability:

1. It is the undersigned's opinion that the proximate cause of the semi-trailer collapse was as a result of the kickstand legs not being properly set and failure of properly inspecting the same by Urjiles prior to permitting access by dockworkers.
2. It is the undersigned's opinion that the precipitous collapse of the semi-trailer was caused by the improper final resting point of the kickstand legs' wear pads on the #2 axle of the subject Great Dane semi-trailer.
3. It is the undersigned's opinion that the precipitous collapse of the semi-trailer caused by the kickstand legs not being properly set was a contributing factor as a result of Urjiles failure to properly inspect as instructed to by the control panel door prior to backing to the dock for loading purposes.
4. It is the undersigned's opinion that due to the fact that the Maxi-Lok system required Urjiles interaction by controlling the air valves (up/down), he had a duty

to closely examine but failed to follow the instructions on the control panel door instructing him to inspect the kickstand legs for proper placement.

5. It is the undersigned's opinion that Urjiles had the last best opportunity to prevent the semi-trailer collapse had he properly inspected the kickstand legs after actuating the control valve, before allowing access by dockworkers, namely Goodman at TRW.

6. It is the undersigned's opinion that Urjiles has a duty to insure that his CMV is safe in its operation before allowing persons to enter his semi-trailer. If it is determined that safety standards are not met such as the instructions on the control panel, he must immediately deny access and or operation of his CMV, and notify his Motor Carrier employer.

7. It is the undersigned's opinion that Dillon failed in its duty to insure that Urjiles was properly trained in the operation of the Maxi-Lok system according to Hendrickson's instructions, and the required inspection of the same.

8. It is the undersigned's opinion that Dillon failed in its duty to properly and regularly lubricate their CMV, namely the subject Great Dane semi-trailer's Maxi-Lok pivot point and associated grease fittings.

## Documents Reviewed:

- ➢ Deposition Transcript of Paul Goodman, w/ Exhibits
- ➢ Deposition Transcript of Ashley Ousterhout, w/ Exhibits
- ➢ Defendant Dillon Transportation, LLC's Witness List – Expert and Lay, Exhibit List Proof of Service
- ➢ Complaint, Jurisdictional Allegations
- ➢ Defendant's Answer to Plaintiff's Complaint
- ➢ Plaintiff's Witness List
- ➢ Plaintiff's Answers to Defendant's Interrogatories
- ➢ Defendant, Dillon Transportation, LLC's Responses to Plaintiffs' Request to Produce
- ➢ Defendant, Dillon Transportation, LLC's, Responses to Plaintiffs' Interrogatories
- ➢ 20-Color Photos of TRW loading dock area
- ➢ Documents responsive to Discovery Demand from Plaintiff
- ➢ 2012 – OSHA Form 300

## Exhibits:

- • SLTC-A: Hendrickson Trailer Suspension Systems, Maxi-Lok Assembly

## References:

- • Federal Motor Carrier Safety Regulation
- • Hendrickson, Maxi-Lok Assembly

21

- AKL-207 Valving Schematic
- WeatherSource
- SAF Holland, Installation and Operation Manual, CBX40/CB-4000, Slider Suspension System
- Black's Law Dictionary; Ninth Edition

**As the sole author of this report, I reserve the right to change or amend my conclusions and opinions based on information that was not available to me at the time of this report writing. Should the need for such changes or amendments be necessary I will submit the same to the retaining counsel of this report.**

**Reported By:**

**Scott L. Turner**
**President**