UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL GOODMAN and LINDA
GOODMAN,                                              Case No. 14-11473

                    Plaintiffs,                       SENIOR U.S. DISTRICT JUDGE
v.                                                    ARTHUR J. TARNOW

DILLON TRANSPORTATION, LLC,                           U.S. MAGISTRATE JUDGE
                                                      R. STEVEN WHALEN

                    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [22]**

Plaintiffs filed this negligence suit on April 11, 2014.  On October 15, 2015,

Defendant filed the instant Motion for Summary Judgment [Dkt. #22].  On

November 5, 2015, Plaintiffs filed a Response [23], to which Defendant filed a

Reply [24] on November 19, 2015.  At the conclusion of a hearing held on April

20, 2016, the Court took the motion under advisement.  During the hearing,

Plaintiffs' counsel asked for, and was granted, permission to provide the Court

with a supplement to the report prepared by Scott Turner.  Plaintiffs filed Turner's

Supplemental Affidavit [27] on May 17, 2016.

For the reasons stated below, Defendant's Motion for Summary Judgment

[22] is **DENIED**.

## FACTUAL BACKGROUND

Defendant Dillon Transportation, LLC is a transportation company with a fleet of tractors and trailers.  Its fleet includes low-boy trailers, which are trailers that ride lower to the ground than others.  Low-boy trailers are normally too low to be loaded or unloaded from a dock.  Accordingly, they are manufactured to include airbags that can be inflated to raise them to the height of a dock.  The inflation of the airbags causes steel legs to lower and rest upon the axle.  The control for a low-boy trailer's airbag system consists of a knob that is pulled to inflate the airbags and pushed to deflate them.  The knob is located on the trailer's exterior, on the middle of the driver's side.

Defendant's drivers are trained at truck driving school, on the job, and through Defendant.  Their training includes education on how to operate low-boy trailers.  The only driver relevant to this case, Miguel Urjiles, testified that he received about thirty minutes of training on the operation of low-boy trailers when hired in 2004.  He testified that he received no further training on their operation before the incident at issue in this case.  Plaintiffs' expert, Scott Turner, opined that the inflation system is simple and that adequate training on it could be completed within fifteen to thirty minutes.

Plaintiff Paul Goodman was working for Defendant on April 26, 2012.  On that date, he used a forklift to unload a low-boy trailer driven by Urjiles.  To

prepare the trailer for unloading, Urjiles pulled the knob to inflate the trailer's airbags. He testified that he watched the inflation process from the side of trailer, saw the legs come to rest upon the axle, and heard the sound of rushing air that the system makes when the legs fall into position. After the airbags inflated, Mr. Goodman began unloading the trailer with his forklift. He drove the forklift into and out of the trailer several times without incident. However, when he began driving it into the trailer another time, the trailer suddenly fell a distance of about one foot. Mr. Goodman was injured.

Mr. Goodman testified that he did not know whether Urjiles did anything to cause the fall. He further testified that Urjiles' actions that day were no different from his actions on previous days when he had elevated the same trailer. A third employee, Ashley Ousterhoust, was also in the vicinity of the trailer at the time of the incident. She testified that she did not know why the trailer fell or whether Urjiles did anything to cause the fall.

Urjiles took the trailer to a mechanic the same day. The mechanic elevated the trailer several times in Urjiles' presence, without incident. The mechanic reported to Defendant that nothing appeared to be wrong with the trailer. There is no evidence that the trailer ever malfunctioned in a similar way again, or that it had done so before the incident that injured Mr. Goodman.

## ANALYSIS

On a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party "may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations … [but instead] must present affirmative evidence." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)).

To succeed on a negligence claim under Michigan law, a plaintiff must prove that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v. Sears, Roebuck and Co.*, 492 Mich. 651, 660 (Mich. 2012) (quoting *Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.*, 489 Mich. 157, 162 (Mich. 2011)).  The general standard of care applicable in negligence cases is the care that a reasonably careful person would use under the circumstances.  *Case v. Consumers Power Co.*, 463 Mich. 1, 7 (Mich. 2000) (citing *Moning v. Alfono*, 400 Mich. 425, 443 (Mich. 1977); *Detroit & M.R. Co. v. Van Steinburg*, 17 Mich. 99, 118–119 (Mich. 1868)).

Here, Plaintiffs offer no direct evidence in support of their theory that Urjiles failed to visually inspect the position of the trailer's legs.  The only witnesses to the incident were Urjiles, Mr. Goodman, and Ousterhoust.  Mr. Goodman and Ousterhoust testified that they did not know what caused the fall and had no evidence that Urjiles did anything to cause it.  Neither witness contradicted Urjiles' testimony that he heard the sound associated with the legs coming to rest on the axle, or his testimony that he saw the legs resting on the axle.

Plaintiffs' only affirmative evidence is the circumstantial opinion evidence presented in Scott Turner's report.  Turner inspected the trailer at issue roughly three years after the incident.  He infers, apparently from the absence of fresh

grease at a certain location during his inspection, that the trailer's legs were inadequately lubricated on the day of the incident, causing them to fail to reach their proper position.  He opines that Urjiles had a duty to visually confirm that the legs had reached their proper position.  He states that an adequate inspection could be accomplished by crawling underneath the trailer or by looking, first on the driver's side and then on the passenger side, from one of two vantage points.  He infers, "[b]y virtue of the semi-trailer collapse in and of itself," that Urjiles failed to adequately inspect the legs.  He concludes that Urjiles' failure to inspect actually and proximately caused the trailer's fall.

Plaintiffs have failed to raise a genuine issue of material fact regarding whether Urjiles failed to visually inspect the legs.  Plaintiffs cannot avoid summary judgment solely on the theory that a jury might disbelieve Urjiles' uncontradicted testimony.  *Fogerty*, 379 F.3d at 353–54 (citing *Cox*, 53 F.3d at 150; *Curl*, 517 F.2d at 214).  To the extent that Turner's report contradicts Urjiles' testimony regarding his visual inspection of the legs, Turner explicitly bases his opinion on the mere fact that the collapse occurred.  This is not a proper basis for opinion evidence.  *See* FED. R. EVID. 701, 702.  To reach a jury on the argument that the collapse "speaks for itself," Plaintiffs must satisfy the requirements of the doctrine of res ipsa loquitur.

"The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." *Woodard v. Custer*, 473 Mich. 1, 7 (Mich. 2005) (quoting *Jones v. Porretta*, 428 Mich. 132, 150 (Mich. 1987)).  The doctrine permits a jury to infer negligence if the following conditions are met:

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;
> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and
> (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

*Id.* (quoting *Jones*, 428 Mich. at 150–51) (internal quotation marks and brackets omitted).  Defendant does not challenge Plaintiffs' ability to satisfy the first two conditions, but argues that they cannot satisfy the third and fourth conditions as a matter of law.  The Court disagrees.

Defendant argues that Plaintiffs cannot satisfy the third condition because Urjiles testified that the manner in which Mr. Goodman drove the forklift may have contributed to causing the fall.  This testimony is insufficient to establish, as a matter of law, that Mr. Goodman's voluntary actions contributed to causing the fall.

Defendant argues that Plaintiffs cannot satisfy the fourth condition because they and Defendant have accessed evidence regarding the cause of the trailer's fall in equal measure. The relevant inquiry, however, is not how thoroughly the parties have accessed the evidence, but how readily the parties can access (or could have accessed) the evidence. *See DeBusscher v. Sam's East, Inc.*, 505 F.3d 475, 481 (6th Cir. 2007) (holding the fourth condition satisfied because the defendant maintained exclusive possession of the fallen basketball goal at issue before and after the fall and because an agent of defendant could have easily checked the goal's ballast level); *Correia-Massolo v. Bed Bath & Beyond, Inc.*, No. 08–14857, 2010 WL 3842352, at *6 (E.D. Mich. Sept. 27, 2010) (unpublished) (finding genuine issue of material fact on the fourth condition because defendant could have taken photographs of the collapsed shelf at issue before one of its agents reconstructed the shelf). Here, Defendant maintained exclusive possession of the trailer before and after the incident. Defendant could have arranged for a more thorough inspection of the trailer immediately following the incident, or at least ensured that the mechanic that inspected the trailer provided a record of the inspection. As Urjiles' employer, Defendant also could have recorded a statement from Urjiles immediately after the event. Defendant has enjoyed more ready access to evidence of the cause of the trailer's fall than Plaintiffs.

In sum, Plaintiffs have produced sufficient evidence to present their res ipsa loquitur theory to a jury.

CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [22] is **DENIED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: June 9, 2016